

## IN THE UNITED STATES DISTRICT COURT
### For the Northern District of Illinois

Jay Stone
10501 82nd Street
Pleasant Prairie, Wisconsin 53158;

Patrick McDonough
1351 West Catalpa Avenue
Chicago, Illinois 60640;

    Plaintiff(s),

      v.

Rahm Emanuel, Mayor
For the City of Chicago
City Hall, 121 North LaSalle Street
5th Floor, Room 507
Chicago, Ill. 60602;

Edward M. Burke, Alderman and Chairman
Of the Chicago City Council
Committee on Finance
City Hall, 121 North LaSalle Street
3rd Floor, Room 302
Chicago, Ill. 60602;

    Defendant(s).

1:18-cv-05166
Judge Robert M. Dow, Jr.
Magistrate Judge Sidney I. Schenkier

**FILED**

JUL 30 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT

Now comes Plaintiffs, Jay Stone and Patrick McDonough, proceeding *pro se*, bringing

this Complaint, against Rahm Emanuel, Mayor of the City of Chicago and Edward M.

Burke, Alderman and Chairman of the Chicago City Council Committee on Finance in

their official-capacity as Mayor, Alderman—Committee on Finance Chairman as follows:

1

## Jurisdiction And Venue

1.       This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under the color of state law, of rights secured by the Constitution of the United States. This Court has jurisdiction under 28 U.S.C. § 1331 and 1343(a)(3). Plaintiffs seek declaratory relief pursuant to 28 U.S.C. 2201 and 2202. Plaintiffs' claims for injunctive relief are authorized by 28 U.S.C. § 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure. The Court has supplemental jurisdiction over Plaintiffs' State law claims under 28 U.S.C. 1367.

2.       The United States District Court for the Northern District of Illinois is the appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occurred.

## Parties

3.       Plaintiff Jay Stone's address, telephone, and e-mail address is, 10501 82nd Street, Pleasant Prairie, Wisconsin 53158; (773) 665-4623; jjstone@gmail.com.

4.       Plaintiff Patrick McDonough's, address, telephone, and e-mail address is, 1351 West Catalpa Avenue, Chicago, Illinois 60640; (312) 685-4333; captpaddy@msn.com.

5.       Defendant Rahm Emanuel, is sued both in his individual capacity, but also in Mr. Emanuel's official capacity as Mayor, For the City of Chicago, whose address and telephone number is City Hall, 121 North LaSalle Street, 5th Floor, Room 507, Chicago, Ill. 60602; Dial 311 within Chicago city limits.

6.      Defendant Edward M. Burke, is sued both in his individual capacity, but also in Mr. Burke's official capacity as Alderman and Chairman, of the Chicago City Council Committee on Finance, whose address and telephone information is City Hall, 121 North LaSalle Street, 3rd Floor, Room 302, Chicago, Ill. 60602; (312) 744-2931.

## Facts

7.      The State of Illinois granted a City Charter to the City of Chicago on March 4, 1837.

8.      The Chicago City Council adopted a revised Municipal Code on June 27, 1990.

9.      The City of Chicago's 1990 Municipal Code remains in effect today.

10.     Chicago Municipal Code Article V., 2-152-420 established the "statutory authority" of the Bureau of Workman's Compensation.

11.     Chicago Municipal Code Article V., 2-152-430 states, "The bureau of workmen's compensation shall be composed of such persons as may be designated or appointed by the chairman of the committee on finance."

12.     Chicago Municipal Code Article V., 2-152-440 states, "The comptroller is hereby authorized to pay, from any fund appropriated for the purpose of said bureau, vouchers to be approved by the chairman of the committee on finance upon the recommendation of said bureau to any person, or in case of his death, to his personal representative, such sum of money as such person or his personal representative shall from time to time be entitled to under and by virtue of the provisions of said acts described in Section 2-152-420."

13.     Alderman Burke has served as Chairman of the City Council Committee on Finance from 1983 to 1987 and from 1989 to present. Because of his City Council position

3

as the Committee on Finance Chairman, Alderman Burke has been administering the Chicago Workers' Compensation Division for 33 years and counting.

14.     Alderman Burke's Committee on Finance website (http://www.committeeonfinance.org/about.asp#WORKERS_COMPENSATION_CLAIMS) states, "Pursuant to Sections 2-152-430 and 2-152-440, of the Municipal Code of Chicago, the Committee on Finance is responsible for the administration of the City's worker's compensation program."

15.     "The Committee on Finance processes and pays the claims for the medical bills incurred by city employees for work related injuries and pays ordered settlements by the Illinois Industrial Commission for injuries sustained in work-related accidents."

16.     Alderman Burke hires, fires, and manages the entire Chicago workers' compensation staff of approximately 65 employees. Alderman Burke and his legislative staff manages all of Chicago's worker's compensation claims and negotiates all of Chicago's workers's compensation settlements.

17.     65 ILCS 5/3.1-15-10 bestowed Mayor Rahm Emanuel with the official title of, "Chief Executive Officer" and all the duties and powers associated with said position. Rahm Emanuel took the mayor's oath of office and swore on May 16, 2011 and May 18, 2015 that he would support the Constitution of the United States and the Constitution of the State of Illinois (65 ILCS 5/6-4-9). ILCS 5/6-4-7 charges Mayor Emanuel with the duty to verify each Chicago Municipal Code obeys the laws of the United States and State of Illinois. Mayor Emanuel has failed in his duty to make sure that he, Alderman

Burke, and the Chicago Municipal Codes are not in violation of the U.S. Constitution, Illinois Constitution, 65 ILCS 5/6-4-6, 65 ILCS 5/6-4-7, 65 ILCS 5/3.1-15-15, and 65 ILCS 5/4-5-16.

18.      The State of Illinois solely invested the power and duty to appoint and remove all City of Chicago department and division heads to Mayor Rahm Emanuel from 2011 to the present (65 ILCS 5/6-4-7). From 2011 to the present Mayor Emanuel unlawfully relinquished his mayoral power and mayoral duty to appoint the Director of Workers' Compensation to Alderman Edward M. Burke.

19.      From 2011 to present, 65 ILCS 5/6-4-7 explicitly provided Mayor Rahm Emanuel with the power and duty to exercise control of all City of Chicago departments and divisions including those departments and divisions created by the Chicago City Council. Mayor Emanuel unlawfully relinquished his mayoral power and mayoral duty to control the Chicago Workers' Compensation Division to Alderman Edward M. Burke from 2011 to present. Because Mayor Emanuel is ceding his executive branch powers and duties to a legislator, Mayor Emanuel and Alderman Burke are violating the separation of powers article in the U.S Constitution.

20.      65 ILCS 5/6-4-6, Powers of Council states, "The powers of the council shall be purely legislative, except as may be otherwise specifically provided by any other act or by any article of this Code." 65 ILCS 5/6-4-6 is a guarantee that the Chicago government will maintain its separation of powers by restricting City Council members to only act as legislators, not administrators as Alderman Burke is doing by managing all of Chicago's Workers' Compensation employees and claims.

21.        The Chicago Municipal Codes must comply with all Illinois compiled statues (ILCS), including Illinois 65 ILCS 5/6-4-6, powers of the council, the Illinois Constitution, and the U.S. Constitution.

22.        The Illinois compiled statues (ILCS) has no provision or act in its Code that authorizes the Chicago City Council to perform duties other than purely legislative.

23.        Sections 2-152-430 and 2-152-440, of the Municipal Code of Chicago violate 65 ILCS 5/6-4-6, powers of the council because the Chicago Municipal Code grants the alderman who is the Chicago City Council Committee on Finance Chairman the non-legislative, executive branch of government duty of administering Chicago's Workers' Compensation program.

24.        Alderman Burke stated on his webpage that Chicago Municipal Code Sections 2-152-430 and 2-152-440 make him and his Committee on Finance staff "responsible for the administration of the City's worker's compensation program." (see Paragraphs 14 and 15 above).

25.        According to 65 ILCS 5/6-4-6, Committee on Finance Chairman Edward M. Burke, must restrict his official City Council duties to purely legislative duties because the Illinois compiled statues (ILCS) has no exception or exemption for him to do otherwise.

26.        Alderman Burke's administration of the Chicago's workers compensation program violates Illinois 65 ILCS 5/6-4-6 requirement that members of the Chicago City Council perform purely legislative duties. Furthermore, 65 ILCS 5/6-4-6 implies that Alderman Burke must refrain from performing the customary functions of the executive

branch of government, including the administration of Chicago's Workers' Compensation employees and claims.

27.     Alderman Burke repeatedly violated 65 ILCS 5/4-5-16 by deliberating submitting annual budgets that were far less than the actual amount his Committee on Finance expended each year. "It is unlawful for the council or any commissioner to expend, directly or indirectly, a greater amount for any municipal purpose than the amount appropriated for that purpose in the annual appropriation ordinance passed for that fiscal year (65 ILCS 5/4-5-16).

28.     For fiscal year 2018 Alderman Burke submitted and voted to approve a budget for 25 Committee on Finance employees when he had 65 employees working for him at that time. Alderman Burke has deliberately underreported the number of employees working for him and the amount of their salaries from at least 2011 to present.

29.     The purpose of Alderman Burke intentionally under budgeting the number of employees on his staff and his staff's salaries is to hide this information from the public. In addition, from at least 2011 through 2018 Alderman Burke deliberately under budgeted Workers' Compensation claims and settlements for the purpose of keeping this information from the public.

30.     At the time Alderman Burke was under appropriating his staff, workers' compensation claims and settlements, he also championed a City Council ordinance to block the Chicago Office of the Inspector General (OIG) from auditing and investigating his Finance Committee and Workers' Compensation Division.

31.     In March, 2016 Plaintiff Stone filed an OIG complaint regarding the impropriety of Alderman Burke managing the City's Workers' Compensation employees and claims. Mr. Stone believes that the IGO never followed through on his complaint because of the restrictions Alderman Burke placed on the OIG when he pushed his OIG ordinance through the City Council (see paragraph 30).

32.     Alderman Burke has unfettered access to $1.4 billion that the City of Chicago collects in fees and puts into the Water Fund, Vehicle Tax Fund, and Sewer Fund. Hidden side notes in the City of Chicago budget state that the Water Fund, Vehicle Tax Fund, and Sewer Fund are, "To Be Expended at the Direction of the Chairman of the Committee on Finance."

33.     65 ILCS 5/6-4-6 requires the council to approve payment of all City of Chicago expenses and liabilities. The hidden Chicago budget side notes that allowed Alderman Burke to expend up to $1.4 billion a year in Water, Sewer and Vehicle Tax funds violate 65 ILCS 5/6-4-6 because Illinois law requires the Chicago City Council to approve the City's expenses and liabilities.

34.     Chicago Municipal Code Sections 2-152-430 and 2-152-440 charge Alderman Burke with the power and duties to hire and manage all the City of Chicago Workers Compensation Division employees and claims. Sections 2-152-430 and 2-152-440 of the Chicago Municipal Code essentially make Alderman Burke the Chief Workers' Compensation Administrator without formally naming as such. Furthermore, Alderman Burke's responsibilities and complete control over the Workers' Compensation Division's day to day operations for over 33 years also earn him the title of Chief Administrator. No one,

8

not even Mayor Emanuel, tops Alderman Burke in the day to day management of Workers' Compensation employees and claims.

35.     By simultaneously holding the positions of Chief Administrator for the Chicago's Workers' Compensation Division and alderman, Edward M. Burke's two jobs are a violation of 65 ILCS 5/3.1-15-15, holding of other offices (Illinois Attorney General, June 30, 1980 opinion File No. S1494). 65 ILCS 5/3.1-15-15 states that aldermen may not hold another office in a municipality during their term of office unless the aldermen take a leave of absence.

36.     Alderman Burke's dual jobs as Workers' Compensation top administrator and alderman do not meet any of the criteria for 65 ILCS 5/3.1-15-15 exemptions.

37.     Alderman Burke's dual jobs as alderman and Chief Administrator for the Chicago's Workers' Compensation Division are inherent conflicts of interest because Alderman Burke voted in the City Council to approve the $1.4 billion that he is entitled to expend using Workers' Compensation vouchers. Alderman Burke appropriating funds as a legislator is a conflict of interest with him spending those funds as a Workers' Compensation administrator. Alderman Burke cannot fully and faithfully perform both his jobs as a legislator and as an administrator (People v. Bott, 261 Ill. App. 261, 265, 2nd Dist. 1931). Alderman Burke's intentional under budgeting his Workers' Compensation Division's staff, claims and settlements year after year are examples of the harm already caused by Alderman Burke's conflicts of interest and his unconstitutional union of legislative and executive powers.

38.     The City's Law Department hired Monica Somerville as a Chief Assistant Corporation Counsel shortly after her name appeared on the Chicago Clout List.

39.     FBI agents discovered the City of Chicago Clout List when they raided Robert Sorich's City Hall office as part of the bureau's job rigging investigation. The Clout List that contained Monica Somerville's name among many others was one of the reasons Honorable Judge Wayne Andersen appointed Noelle Brennan to serve as a "Federal Court Monitor." Ms. Brennan oversaw the City of Chicago's policy and personnel decisions for 10 years.

40.     The City's Law Department fired Ms. Somerville for incompetence 17 months after she began working as a Chief Assistant Corporation Counsel. Ms. Somerville unsuccessfully sued the City and her supervisor for racial discrimination and sexual harassment after the City terminated her. Given Ms. Somerville's disciplinary termination and her baseless lawsuit, Ms. Somerville's name would have appeared on the City's "Do Not Hire" list if the City had maintained one at the time the City fired Ms. Somerville .

41.     Alderman Burke's hiring of Monica Somerville as a legislative aide for his Committee on Finance came after the City terminated her.

42.     Though Alderman Burke hired Ms. Somerville as a "legislative aide," Ms. Somerville misstated her job title as "Director of Workers Compensation" in her letters to Patrick McDonough. Ms. Somerville's false claim that she was "Director of Workers' Compensation" deceived Mr. McDonough in his dealings with her. Ms. Somerville sent Patrick McDonough a letter informing him that she suspended his benefits on January 7, 2016. Mayor Emanuel's failure to hire the Director of Workers' Compensation and exer-

cise his control of Chicago's Workers Compensation Division as 65 ILCS 5/6-4-7 requires allowed Alderman Burke to hire Monica Somerville. Ms. Somerville's mismanagement of Mr. McDonough's workers' compensation claims caused Mr. McDonough to suffer great mental, emotional, and financial harm.

43.     Alderman Burke may hire any Director of Workers' Compensation candidate he wants regardless of the candidate's qualifications; however, that is not true for Mayor Emanuel. 65 ILCS 5/6-4-7 requires Mayor Emanuel to only appoint City of Chicago department and division heads based on the candidates' "merit and fitness." Given that the City previously fired Ms. Somerville for ineptitude and Ms. Somerville's baseless lawsuit against the City and her supervisor, Alderman Burke's hiring of Monica Somerville for the position of Director of Workers' Compensation would not have met the merit and fitness hiring criteria for department and division heads that 65 ILCS 5/6-4-7 imposes on Mayor Emanuel.

## Legal Claims

## COUNT I

44.     Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

45.     Mayor Emanuel and Alderman Burke are in violation of the First Amendment and the equal protection clause of the Fourteenth Amendment because their unlawful use of Workers Compensation Division patronage employees infringed upon the rights of a fair and equal electoral process.

46.     Because Mayor Emanuel failed to exercise control of the Workers Compensation Division as 65 ILCS 5/6-4-7 requires, Alderman Edward Burke was able to hire political

appointees who lacked the requisite workers' compensation education and experience. Prior to joining Alderman Burke workers' compensation staff, Alderman Burke's employees worked as a dog groomer, dog walker, hairstylist, waitress, and other jobs unrelated to the administration of Workers' Compensation.

47.     Alderman Burke's hires who had a college education do not possess degrees pertaining to the field of workers compensation.

48.     Alderman Burke has no formal workers' compensation training program, workers' compensation training manual, or workers' compensation guidelines to insure all injured City workers are treated equally.

49.     Alderman Burke's unprofessional recruitment and management of his workers' compensation subordinates create a politicized environment that encourages workers' compensation employees to make bias, unfair decisions based on politics, not merit.

50.     Alderman Burke's incentive to serve as Chicago's Worker's Compensation top administrator is the approximate 65 Shakman exempt jobs that he controls. Besides campaign contributions, aldermen covet the control of Shakman Exempt patronage jobs more than anything else. Alderman Burke hires his Workers' Compensation subordinates based on their ability to help him secure votes for himself and his favored candidates. Alderman Burke's political army that consists of his Workers' Compensation employees are violating the First Amendment, Free Speech Rights of candidates, voters, and political organizations who are unaffiliated with Alderman Burke and the Cook County Democratic Organization that Alderman Burke has been a member of for over 50 years (Michael L. Shakman, et al. vs. Democratic Organization of Cook County, et al., No. 69 C 2145).

12

51.     When it came to the Chicago's Workers' Compensation Division, the City of Chicago negotiated in bad faith with attorney Michael Shakman. The City did not fully disclose that the entire Workers' Compensation staff were Committee on Finance employees who were under Alderman Burke's direct supervision.

52.     During the Shakman negotiations each City job was either designated as Shakman Non-Exempt or Shakman Exempt, including City employees working for aldermen and their respective committees. The City used such job titles of clerk of the City Council, legislative aide, and legislative research analyst to create a false impression that workers' compensation employees assigned to the Committee on Finance were performing work directly related to legislation.

53.     Alderman Burke created job titles and job classifications that were not in the Shakman Hiring Plan that the City agreed to follow. As previously mentioned (see paragraph 42), Alderman Burke's Legislative Aide Monica Somerville falsely claimed she was the "Director of Workers' Compensation." Luana Olivas Montoya official job title is "Legislative Research Analyst," but Alderman Burke directed Olivas Montoya to use the job title of "Executive Director of Claims Management." Maridza Ramos-Torres official job title is "Legislative Aide." Alderman Burke gave Ramos-Torres the job title of "Investigative Claims Adjuster." John Sarantopoulos official job title is "Legislative Aide;" however, Alderman Burke told Sarantopoulos to use the job title of "Police and Fire Adjuster."

54.     Alderman Burke created job titles and job classifications that did not go through the proper channels of having the Chicago Inspector General and Human Resource

Commissioner approve of the Workers' Compensation job title and job classification changes as the Shakman Hiring Plan requires.

55.      Had the City used the job titles of Executive Director of Claims Management, Investigative Claims Adjuster, and Police and Fire Adjuster during the Shakman negotiations or had Alderman Burke sought approval from the OIG and Human Resources Commissioner for the Workers' Compensation job title and job classification changes as the Shakman Plan required, it would have revealed Workers' Compensation employees assigned to the City Council Committee on Finance were performing work unrelated to legislation.

56.      Mayor Emanuel's motivation to relinquish control of Chicago's Workers Compensation Division to Alderman Burke is purely political. Alderman Burke is the most senior and powerful member of the Chicago City Council. Mayor Emanuel relinquished his duty to manage Chicago's Workers' Compensation Division in exchange for Alderman Burke's City Council vote and the votes of other aldermen that Alderman Burke routinely delivers for the mayor.

57.      Alderman Burke provides preferential treatment, including disability pay, benefits, and settlements to injured city workers when they are also precinct captains for political bosses throughout Chicago and Cook County. During election seasons, the City workers—who received preferential workers' compensation benefits from Alderman Burke—campaign and deliver votes for Alderman Burke and his favored candidates. Mayor Emanuel refuses to encroach on Alderman Burke's political turf because it would

cost the mayor City Council votes and votes from all across Chicago when he runs for reelection.

58.      Since Mayor Emanuel was not in control of the Chicago Workers Compensation Division as 65 ILCS 5/6-4-7 requires, Alderman Burke and his staff's decisions in Patrick McDonough's Workers' Compensation case are void *ab initio*.

59.      Because the statues of Illinois, the Illinois Constitution and the U.S. Constitution disallow Alderman Burke from administering Chicago's workers' compensation program, Alderman Burke and his staff's management and decisions are void from the start of Patrick McDonough's workers' compensation claims.

60.      As a direct and proximate cause of the actions, inactions, fault, negligence, and/or malfeasance of the Defendant(s), both Jointly and Severally, complained of herein, the Plaintiffs have been deprived of their First Amendment and Due Process Rights Guaranteed Plaintiffs by the 14th Amendment to the National Constitution, insofar as the same, both on it's face and as applied to Petition, are violative of the Separations of Powers Doctrine as the same allows for no checks and balances and allows the Legislative Branch of the Government to exercise Powers only granted to the Executive Branch, in violation of both the National Constitution and Constitution of Illinois

### Prayer For Relief

61.      Plaintiffs hereby incorporate the foregoing paragraphs as if fully set forth herein.

62.      Wherefore, Plaintiffs pray that this petition be granted, that this court enter a permanent injection ordering Alderman Edward M. Burke to immediately cease and desist his administration of the City of Chicago Workers' Compensation program and that the

court order the City of Chicago to move the administration of its Workers' Compensation Division from the legislative branch of government to the executive branch of government for the purpose of having Mayor Emanuel and Alderman Burke comply with the U.S. Constitution, Illinois Constitution, 65 ILCS 5/6-4-6, 65 ILCS 5/6-4-7, 65 ILCS 5/3.1-15-15, and 65 ILCS 5/4-5-16; along with a declaration that the laws and procedures as well as the legal and factual determinations used or rendered by the Defendant(s), jointly and severally, are void *ab initio*, along with Plaintiffs' costs in this suit and any other relief this Court deem just, equitable, and fair. Furthermore, Plaintiffs pray that the Court grant the Chicago Office of the Inspector General permission to conduct a Workers' Compensation Division financial audit and claims review for the last seven years and allow the OIG to release its findings to the public.

Dated this __27__ of July, 2018

_____
Jay Stone
Plaintiff, *pro se*
10501 82nd St.
Pleasant Prairie, WI 53158
(773) 665-4623

Dated this ___30___ of July, 2018

Patrick McDonough
Plaintiff, *pro se*
1351 West Catalpa Avenue
Chicago, Illinois 60640
(312) 685-4333